## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

ELLISA APODACA fka ELLISA
WINDCLIFF,

        Plaintiff,

                                        Civ. No. 04-1379 MV/RHS

vs.

MESA COUNTY, COLORADO; THOMAS
PAPIN, in his individual and official
capacities; STUART JONES, in his individual
and official capacities; ROSANNA ELMY, in
her individual and official capacities; TOY
SMITH, in her individual and official
capacities; LHANA JORDAN, in her
individual and official capacities; THOMAS
MILLER; DOE DEFENDANTS 1-5,
unknown employee(s) of Mesa County, in his
or her individual and official capacities; and
ANDERSON MERCHANDISERS, LP, a
Texas Limited Partnership,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on *Defendant Anderson Merchandisers LP's*

*Motion to Dismiss for Failure to State a Claim*, **[Doc. No. 21]**, filed March 31, 2005. The Court,

having considered the motion, briefs, relevant law and being otherwise fully informed, finds that

Defendant Anderson Merchandiser's motion is well taken and will be **GRANTED as to**

**Plaintiff's § 1983 claims**.

## BACKGROUND

On December 9, 2004, Plaintiff filed a Complaint alleging that several defendants,

including Anderson Merchandisers, LP ("Anderson"), violated her civil rights by wrongfully

garnishing her wages and intercepting her federal income tax returns **[Doc. No. 1]**.  The following facts are alleged in Plaintiff's Complaint:  Plaintiff and Defendant Thomas Miller ("Miller") were married in 1979 and divorced in 1987.  The divorce decree included a parenting plan, which provided for joint custody of the couple's children, no child support, and continuing jurisdiction of the decree in the Eighth Judicial District of the State of New Mexico.

On or about November 8, 1999, the State of Colorado, at the request of the Mesa County Department of Social Services ("MCDSS"), brought an action against Plaintiff to modify the child support order.  This action was dismissed without prejudice on June 5, 2000.  After this, on or about July 24, 2000, MCDSS and Miller filed a "Verified Petition to Declare the Existence of Non-Existence of a Parental Relationship and to Obtain Child Support" in the District Court of Mesa County, Colorado.  Defendants were unable to execute service of process on Plaintiff in New Mexico. A judgment, however, was entered against Plaintiff.

Around September 2002, the State of Colorado brought an action to register the judgment entered against Plaintiff in the State of New Mexico.  The Eighth Judicial District of New Mexico declined to register the judgment because personal jurisdiction over Plaintiff had not been established.  On or about July 7, 2003, an order was entered stating as such, effective December 9, 2002.  Plaintiff alleges that beginning on or about October 31, 2000, Defendants MCDSS, Papin, Jones, Elmy, Smith, Doe, and Jordan served several orders to withhold Plaintiff's wages and income for child support on Plaintiff's employers in New Mexico, including Anderson, a limited-partnership in Texas.  Anderson complied with the orders and garnished $450 from Plaintiff's wages every two weeks.  Plaintiff alleges that the garnishment of her wages caused her to be constructively discharged from her employment at Anderson.

2

In Plaintiff's Complaint, she alleges four claims against Anderson specifically:  42 U.S.C. § 1983 claims (Counts I-III) and a conversion claim (Count IV).

## STANDARD

### I.   Motion to Dismiss Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides in relevant part that "failure to state a claim upon which relief can be granted" is a defense to a claim for relief in any pleading.  Fed. R. Civ. P. 12(b)(6).  The Court may not dismiss a cause of action under Rule 12(b)(6) for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts supporting his or her claim that would entitle him or her to relief.  *See, e.g.*, *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 249-50 (1989).  When considering a motion to dismiss, the Court must assume as true all well-pleaded facts, and must draw all reasonable inferences in favor of the plaintiff.  *See Housing Auth. of the Kaw Tribe v. City of Ponca City,* 952 F.2d 1183, 1187 (10th Cir. 1991).  The issue in reviewing the sufficiency of a complaint "is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claim." *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).  "[G]ranting a motion to dismiss is 'a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice.'" *Cayman Exploration Corp. v. United Gas Pipe Line Co.,* 873 F.2d 1357, 1359 (10th Cir. 1989) (quoting *Morgan v. City of Rawlins*, 792 F.2d 975, 978 (10th Cir. 1986)).  These deferential rules, however, do not allow a court to assume that a plaintiff "can prove facts that [the plaintiff] has not alleged or that the defendants have violated the...laws in ways that [the plaintiff has not] alleged." *See Associated Gen. Contractors, Inc. v. California State Council of Carpenters*, 459

U.S. 519, 526 (1983).

## II.   Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Jones v. Kodak Medical Assistance Plan*, 169 F.3d 1287, 1290 (10th Cir. 1999). Under Rule 56(c), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Upon a motion for summary judgment, the Court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence." *Kaus*, 985 F. Supp. at 1281.

## III.   The Appropriate Standard in the Instant Case

Although Anderson initially filed a motion to dismiss pursuant to Rule 12(b)(6), when matters outside the pleadings are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56. Fᴇᴅ. R. Cɪᴠ. P. 12(b).

In her response brief, Plaintiff presented evidence outside the pleadings in the form of affidavits from herself and her attorney on the issue of whether Anderson is entitled to absolute

4

immunity on Plaintiff's conversion claim.[1]  If these documents had been clearly referenced in the Complaint, the court could consider them without converting the matter into a motion for summary judgment. *See MacArthur v. San Juan County*, 309 F.3d 1216, 1221 (10th Cir. 2002). Plaintiff, however, does not reference the material in her affidavits in the Complaint.  When neither party is prejudiced, a court may convert a motion to dismiss into one for summary judgment without giving notice or time for additional briefing. *Burnham v. Humphrey Hospitality REIT Trust, Inc.*, 403 F.3d 709, 713-14 (10th Cir. 2005).

        Here, the Court finds that Anderson will be prejudiced if it is not given time to respond to Plaintiff's evidence.  New Mexico state statutes establish immunity from civil liability in the following circumstance:

> An employer who complies with an income-withholding order
> issued in another state in accordance with this article is not subject
> to civil liability to an individual or agency with regard to the
> employer's withholding of child support from the obligor's income.

N.M. STAT. ANN. § 40-6A-504 (Michie 2004).  Plaintiff has presented evidence in her affidavit that Anderson did not give her immediate notice of the garnishment order, which is a prerequisite to compliance and immunity.  Section 40-6A-502 provides as follows:  "Upon receipt of an income-withholding order, the obligor's employer shall immediately provide a copy of the order to the obligor."  N.M. STAT. ANN. § 40-6A-502 (Michie 2004).  Anderson is entitled to present evidence on this issue.  Thus, the Court will not consider summary judgment on Plaintiff's conversion claim at this time.

_____

        [1] As the Court finds that Plaintiff's additional evidence applies only to the question of whether Anderson is immune from her conversion claim, the Court will continue to consider Plaintiff's § 1983 claims under the Rule 12(b)(6) dismissal standard.

## DISCUSSION

Anderson seeks to dismiss Plaintiff's 42 U.S.C. § 1983 claims against it because Plaintiff has failed to state a claim upon which relief can be granted.  Anderson argues that it cannot be held liable under § 1983 because it is a private entity and thus its actions were not "under the color of state law."  Anderson also argues that attorney's fees are appropriate because Plaintiff's § 1983 claims against it "are clearly inappropriate and frivolous."

**I.**     **Plaintiff's § 1983 Claims Against Anderson**

42 U.S.C. § 1983 provides that any person who "under color of ... [law] ... subjects, or causes to be subjected, ... any [person] ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."  To state a claim for relief in a section 1983 action, a plaintiff must establish that she was (1) deprived of a right secured by the Constitution or laws of the United States; and (2) that the alleged deprivation was committed under color of state law.  *See American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).  The "under color of state law" requirement is a "jurisdictional requisite for a § 1983 action."  *Polk County v. Dodson*, 454 U.S. 312, 315 (1981).

Plaintiff meets the first prong of this test with her allegation that Defendant violated her procedural due process rights.  To determine whether Plaintiff has satisfied the requirement that the deprivation was caused by a person acting under color of law, the Court must evaluate the private party's conduct under a two-part framework:  (1) "whether the claimed constitutional deprivation resulted from the exercise of a right or privilege having its source in state authority"; and (2) "whether the private party charged with the deprivation could be described in all fairness as a state actor."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).  As to the second

prong, "[t]his may be because [the party] is a state official, because [it] has acted together with or has obtained significant aid from state officials, or because [its] conduct is otherwise chargeable to the State." *Id*.

Courts have applied several tests to determine whether a private party's conduct fairly may be attributable to the state. These tests are: (1) the nexus test; (2) the public function test; (3) the joint action test; and (4) the symbiotic relationship test. *See Gallagher v. " Neil Young Freedom Concert,"* 49 F.3d 1442, 1447 (10th Cir. 1995); *Johnson v. Rodriguez*, 293 F.3d 1196 (10th Cir. 2002).[2] Recently, the Supreme Court announced a new, more encompassing approach to "state action" called "entwinement." *See Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 302 (2001). As the Court explained in *Brentwood*, the concept of entwinement addresses the state action question with flexibility: "no fact can function as a necessary condition across the board for finding state action[.]" *Id*. at 295. Thus, the notion of entwinement recognizes that the four tests set forth above are, for all intents and purposes, tools for factual analysis that "bear on the fairness of ... an attribution [of state action]." *Id*. at 296. As such, *Brentwood* urges courts to apply the traditional tests only so far as they force courts to zero in on the fact-intensive character of a state action determination.

The Court now turns to an analysis of the various "state action" tests, mindful that the tests are only "tools" to determine if Anderson's conduct is fairly attributable to the state.

---

[2] Plaintiff urges this Court to ignore the framework of the four "state action" tests set forth in *Gallagher*. This argument is without merit. Plaintiff is unable to point to any Tenth Circuit case that disavows these tests. Further, even if the four tests are analyzed as mere "factors" and not "independent tests," as Plaintiff suggests, Plaintiff's arguments that Anderson is a state actor fails as explained herein.

7

A.    <u>The Joint Action Test</u>

Joint action requires a showing that a private party is a "willful participant in joint action with the State or its agents."  *See Dennis v. Sparks*, 449 U.S. 24, 27 (1980) (citation omitted). "[T]he focus of [the joint action] test is not on long-term interdependence between the state and a private entity.  Instead, courts examine whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights."  *Gallagher*, 49 F.3d at 1453. "In applying this test, some courts have adopted the requirements for establishing a conspiracy under Section 1983.  These courts conclude that '[a] requirement of the joint action charge ... is that both public and private actors share a common, unconstitutional goals.'"  *Id*. at 1454 (citation and quotation omitted).

In her Complaint, Plaintiff has not alleged any facts to suggest overt and significant participation of Anderson in depriving her of her constitutional rights.  Plaintiff does not allege that Anderson knew the garnishment order was illegal and unenforceable.  Further, Plainitff does not allege that Anderson acted "in concert" with the state in garnishing Plaintiff's wages.  Plaintiff does not allege any communication between the parties, nor does she allege that they shared a common, unconstitutional goal.  To the contrary, the Complaint suggests that Anderson merely was a passive participant in the state's process.  As courts have held, the mere acquiescence of a state official in the actions of a private party is not sufficient to establish state action.  *See, e.g., Flagg Brothers Inc. v. Brooks*, 436 U.S. 149, 164 (1978) ("This Court ... has never held that a State's mere acquiescence in a private action converts that action into that of the State."). Logically, the opposite is also true.  That is, mere acquiescence of a private party in the actions of a state is insufficient to establish state action.

Plaintiff's reliance on *Coleman v. Turpen*, 697 F.2d 1341 (10th Cir. 1982) in arguing "joint action" is misplaced.  In that case, the Tenth Circuit determined that private towing company acted under the color of state law when it seized the plaintiff's truck pursuant to a state statute, stored it, and sold it on the state's behalf.  *Id*. at 1343.  The court emphasized the "joint participation" between the state and the towing company in reaching this conclusion.  *Id*. at 1345. Plaintiff has alleged no such "joint participation" between the State of Colorado and Anderson. Plaintiff has not alleged, as in *Turpen*, that Anderson profited from enforcement of the garnishment order or that Anderson worked cooperatively with the state.  In fact, Plaintiff has not alleged any communication between Anderson and the state.  The Court need not assume that Plaintiff can prove these unalleged but essential facts.  *See Associated Gen. Contractors, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 519 (1983).

In addition, *Lugar*, which Plaintiff cites repeatedly, is not applicable to the instant case. In *Lugar*, the Court considered a due process claim brought by a debtor against a private company that had initiated prejudgment attachment proceedings.  Under the Virginia procedure at issue, the private company filed an *ex parte* petition alleging that the debtor might be disposing of property to defeat his creditors. *Lugar*, 457 U.S. at 924. Acting on that petition, the clerk of the state court issued a writ of attachment, and the county sheriff executed the writ.  *Id*.  The Court rejected the conclusion of a lower court that "'joint participation' required something more than invoking the aid of state officials to take advantage of state-created attachment procedures." *Id*. at 942.  It explained that "[w]hatever may be true in other contexts, this is sufficient [i.e. invoking the aid of state officials to take advantage of state-created attachment procedures] when the State has created a system whereby state officials will attach property on the *ex parte* application of one

9

party to a private dispute." *Id*.  Thus, the Court found that the creditor's "joint participation with state officials in the seizure of [the] disputed property" was sufficient to characterize the creditor as a state actor.  *Id*. at 941.

Plaintiff attempts an analogy to the facts of that case, maintaining that, like the creditor in *Lugar*, Anderson was a "willful participant" with the state in enforcing the garnishment order.  In the instant case, however, there are no allegations that Anderson invoked the aid of state officials in carrying out the garnishment order, which was initiated by the state.  Plaintiff thus appears to misunderstand the state action doctrine when it argues that

> [t]he attribution of these actions [wage garnishment] taken by Anderson could not be more clearly associated with the state action alleged ... Its (sic) strains credulity to characterize the conduct as merely private conduct.  The conduct would not have occurred but for the color of state action that was the source of the authority the [order] possessed.

Pltf. Resp. at 7.  Certainly, as Plaintiff has alleged, the state's action is subject to a § 1983 claim. Further, it is undisputed that the state was the source of the order's authority.  But Anderson's enforcement of a garnishment order does not, without more, convert the company into a state actor.  Lacking concrete allegations of any joint action, Plaintiff is unable to meet this test.

### B.    The Symbiotic Relationship Test

The key to the "symbiotic relationship" test is determining whether the State "has so far insinuated itself into a position of interdependence with [a private party] that it must be recognized as a joint participant in the challenged activity, which, on account, cannot be considered to have been so purely private as to fall without the scope of the Fourteenth Amendment." *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725 (1961) (quotations

10

omitted).

Here, Plaintiff has not alleged any interdependence between Anderson and the state. Plaintiff has made no allegations that Anderson profits by garnishing wages in cases like Plaintiff's. Plaintiff has made no allegations that Anderson is financed by the state or that it reports to the state in any way. Accordingly, Plaintiff has not alleged sufficient facts that a symbiotic relationship exists between Anderson and the state.

### C.   The Nexus Test

The nexus test focuses on the whether the private entity's behavior is of such a nature that it can be fairly treated as that of the state itself. Under this approach, "a state normally can be responsible for a private decision only when it has exercised coercive power or has provided significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). The test insures that the state will be held liable for constitutional violations only if it is responsible for the specific conduct of which the plaintiff complains. *Id*.

Anderson's actions do not render it a state actor under the nexus test. Plaintiff's allegations suggest that Anderson simply was performing a duty that it was directed to do as Plaintiff's employer. Plaintiff does not allege that Anderson had any control over the order itself, including the amount. Plaintiff does not allege that Anderson made an independent decision to garnish Plaintiff's wages. From the facts alleged in the Complaint, Anderson's compliance with the garnishment order was "mere acquiescence" in the state's initiative. This is insufficient to justify holding Anderson responsible for the state's directive. Without more, then, Plaintiff cannot meet the nexus test.

11

### D.        The Public Function Test

Under the "public function" test, which is arduous to satisfy, Plaintiff must show that "the state delegates to a private party a function traditionally exclusively reserved to the State." *Gallagher*, 49 F.3d at 1456 (internal citations omitted).  If so, then the private party is "necessarily a state actor." *Id*.  The Supreme Court rejected a similar theory in *Flagg Brothers*. In that case, the respondents argued that a New York state statute which gave a warehouseman a right to execute a lien on stored goods delegated a function which had traditionally been that of the state -- the resolution of private disputes.  *Flagg Brothers*, 436 U.S. at 157. Finding no state action, the Court noted that "[w]hile many functions have been traditionally performed by governments, very few have been exclusively reserved to the State." *Id*. Traditional state functions that the Supreme Court has found to satisfy the "exclusivity" test include the administering of elections of public officials, *Terry v. Adams*, 345 U.S. 461 (1953), and the operation of a company-owned town, *Marsh v. Alabama*, 326 U.S. 501 (1946).

Plaintiff fails to make any allegations that Anderson, by garnishing her wages, was in any way performing a function exclusively or primarily reserved to the state.  Thus, Plaintiff cannot satisfy the "public function" test.

### E.        Has Plaintiff Demonstrated State Action?

Considering all of the facts set forth above, Plaintiff fails to demonstrate sufficient evidence of state action to state a claim upon which relief may be granted.  This conclusion is strengthened by looking to the entwinement principles set forth in *Brentwood Academy*.  In that case, the Court determined that a secondary school athletic association, composed of both private and public schools, engaged in state action when it enforced a rule restricting the recruitment of

12

student athletes.  *See id.* at 291.  In so holding, the Court highlighted several key facts, including, *inter alia*, that 84% of the association's members were public schools; that the public school officials performed most of the tasks of the association; that the association staff was eligible for Tennessee's public employees' retirement program; and that a state board of education member served as an ex-officio member of the association's board.  *Id.* at 298-99.  Using these facts, the Court concluded that "regulatory activity may and should be treated as state action owing to the pervasive entwinement of the state school officials in the structure of the association, there being no offsetting in the structure of the association, there being no offsetting reason to see the association's acts in any other way."  *Id.* at 291.

      In the instant case, it is clear that Anderson and the State of Colorado are not "entwined" in any way.  Plaintiff does not allege that any public officials are on staff at Anderson, nor does she allege that Anderson employees participate in state programs or receive state benefits.  Plaintiff's Complaint suggests that the only relationship between the two parties is that Anderson enforced a garnishment order it received from the State of Colorado.  Whether or not the order itself was legal, Anderson's compliance with it does not convert it to a state actor.  In the past, courts have declined to find private parties state actors if the private party complies with a wrong judgment.  *See, e.g., Richard v. Hoechst Celanese Chem. Group, Inc.*, 355 F.3d 345, 353 (5th Cir. 2003) ("If a court wrongly decides a case, the fact that a private party complies with that wrong decision does not constitute state action.").

      Further, it is not feasible to expect a private company, such as Anderson, to investigate every garnishment order to ensure that it is legal.  Under New Mexico law, if Anderson had not complied with the income-withholding order, it would have been subject to civil penalties.  New

Mexico Statute § 40-6A-405 provides as follows:

> An employer who willfully fails to comply with an income-withholding order issued by another state and received for enforcement is subject to the same penalties that may be imposed for noncompliance with an order issued by a tribunal of this state.

Finally, to extend the state action doctrine to private parties, like Anderson, who simply comply with orders initiated by the state, unreasonably would expand its scope and violate the spirit of the doctrine.  The purpose of the state action doctrine is to "preserve an area of individual freedom by limiting the reach of federal law and avoid the imposition of responsibility on a State for conduct that it could not control."  *Brentwood Academy*, 531 U.S. at 295. "Without a limit such as this, private parties could face constitutional litigation whenever they seek to rely on some state rule governing their interactions with the community surrounding them."  *Lugar*, 457 U.S. at 937.  For all of these reasons, Anderson's conduct cannot be fairly attributed to the state and, as such, Plaintiff has not alleged facts sufficient to find that Anderson was acting under the color of state law when it garnished Plaintiff's wages.[3]

## II.   Anderson's Request for Attorney's Fees

Anderson requests attorney's fees for defending against Plaintiff's "patently frivolous" § 1983 claims.  Def. Mtn. at 11.  The Tenth Circuit has recognized that a court may award attorney's fees and costs for responding to vexatious and bad faith litigation.  *Pelican Production Corp. v. Marino*, 893 F.2d 1143, 1145 (10th Cir. 1990).  While ultimately unavailing, Plaintiff made a colorable argument that Anderson is a state actor for purposes of imposing liability pursuant to § 1983.  The Court does not find Plaintiff's § 1983 claims to be either frivolous or

---

[3] Because the Court finds that Anderson is not a state actor, the Court need not address Anderson's immunity defense to Plaintiff's § 1983 claims.

14

vexatious.  Accordingly, attorney's fees to compensate Anderson for costs related to filing its motion are not appropriate.

**CONCLUSION**

**IT IS THEREFORE ORDERED** that *Defendant Anderson Merchandisers LP's Motion to Dismiss for Failure to State a Claim*, **[Doc. No. 21]**, filed March 31, 2005, is **GRANTED** as to Plaintiff's § 1983 Claims.  Plaintiff's § 1983 claims against Anderson will dismissed because Plaintiff has failed to meet its burden of demonstrating that Anderson acted under the color of state law.  As to Plaintiff's conversion claim, in the interests of not prejudicing Anderson, the Court will allow Anderson ten (10) days to respond to Plaintiff's affidavits and demonstrate that it is entitled to immunity pursuant to New Mexico Statute § 40-6A-504.  At that time, the Court will consider Anderson's immunity defense to Plaintiff's conversion claim. Finally, the Court declines to allow Anderson to pursue attorney's fees for defending against Plaintiff's § 1983 claims.

Dated this 27th day of October, 2005.

_____
MARTHA VÁZQUEZ
CHIEF UNITED STATES DISTRICT JUDGE

Attorney for Plaintiff:
Jeffrey L. Thomason

15

<u>Attorney for Defendant Anderson Merchandisers, LP:</u>
Dave H. Thomas, III